(79 South. 23)

No. 22735.

BERNHEIM v. PESSOU (two cases).

(Oct. 29, 1917. On the Merits, May 27, 1918.)

*(Syllabus by Editorial Staff.)*

1. APPEAL AND ERROR ⟐393 — SUSPENSIVE AND DEVOLUTIVE APPEALS—SINGLE BOND.

All that is necessary to maintain an appeal is that a bond in the right amount be filed, and where both suspensive and devolutive appeals have been taken, the one bond will serve for the suspensive appeal, if filed in time; if not, for the devolutive appeal.

On the Merits.

2. EVIDENCE ⟐418 — PAROL EVIDENCE AFFECTING WRITING—SALE OF REALTY.

A purchase of realty which appears by the written evidence of the sale to have been made by one person cannot be shown by parol to have been made in reality by or for another person, where the offer of the evidence is to affect the title to the realty, but the evidence is admissible where its purpose is simply to show the payment of a promissory note or the extinguishment of a money obligation by confusion.

3. BILLS AND NOTES ⟐437 — MORTGAGE NOTE—RELEASE FROM OBLIGATION.

Where a mortgagee wrote the mortgagor that he had instituted executory proceedings against her to seize and sell the property formerly owned by her, but that he did not look to her personally for any part of the demand represented by the note, and that he released her from all personal obligation on account of the note, by the letter the mortgagor was released from all obligation on the note.

143 LA.—20

4. MORTGAGES ⟐309(1) — EXTINGUISHMENT OF MORTGAGE NOTE—EFFECT.

Where a mortgagor was released from all obligation on the mortgage note, the mortgage securing the note ceased to exist, since a mortgage is a mere secondary obligation, and a secondary obligation cannot exist in the absence of a primary obligation.

5. CHAMPERTY AND MAINTENANCE ⟐6(2) — LITIGIOUS CHARACTER—TRANSFER FOR LOW PRICE.

Promissory notes are not rendered litigious by being transferred for a low price.

6. MORTGAGES ⟐319(3) — AGREEMENT NOT TO SELL PROPERTY — SUFFICIENCY OF EVIDENCE.

In consolidated suits on a note and mortgage, evidence *held* to show that, even if a bank agreed with a defendant not to sell the property, it was merely a friendly promise, not intended to last more than a few months, nor to be binding further than the bank could carry it out without inconvenience to itself.

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Consolidated suits by Jules Bernheim against A. O. Pessou, and against Mrs. C. N. Pessou, divorced wife of A. O. Pessou, wherein Inez Hoffman Spagnola intervened. From the judgment, plaintiff appeals. Motion was made to dismiss the appeal, and motion denied. Affirmed in part and set aside in part, and judgment ordered for plaintiff.

Borah, Himel, Bloch & Borah, of Franklin, for appellant. Walter L. Gleason, George Montgomery, and George B. Smart, all of New Orleans, for appellee Mrs. Inez Spagnola.

PROVOSTY, J. [1] Motion is made to dismiss the appeal in this case on the following grounds:

"First. That plaintiff and appellant, Jules Bernheim, seeks to recover a money judgment against intervener for over $1,700, and from judgment dismissing his suit has taken a suspensive appeal on furnishing a bond of $200.

"Second. That the lower judge allowed a suspensive appeal on furnishing a bond of $200 and a devolutive appeal on furnishing a bond of $200, but appellant has furnished only one bond for $200 without designating which appeal he intends to perfect.

"Third. The bond for a suspensive appeal is

fixed by law and cannot be fixed by the judge allowing the appeal."

In support of this motion the argument is as follows:

"Appellant has not complied with the order of the court, but has furnished a bond according to his own fancy. The order, in accordance with the prayer of his petition of appeal, called for a separate bond for each appeal. He has failed to comply with this order, and the appeal should be dismissed in accordance with the rule in Lochbaum v. Box, etc., Co., 120 La. 98 [44 South. 998], where the bond furnished was for less than the amount given in the order of court."

The reason why the appeal was dismissed in the case here cited was that the bond could not avail for a suspensive appeal because it had not been filed in time, and could not avail for a devolutive appeal because the amount had not been fixed by the judge. In the instant case the bond was filed in time, and hence can avail for the suspensive appeal; and it is in the amount fixed by the judge, and hence can avail for the devolutive appeal. All that is necessary to maintain an appeal is that a bond in the right amount be filed. Where both appeals have been asked, the one bond will serve for the suspensive appeal if filed in time; if not, then, for the devolutive. Watkins v. Producers' Oil Co., 129 La. 484, 56 South. 388; Brown v. Green, 133 La. 725, 63 South. 303; Cahn v. Baccich & De Montluzin, 137 La. 4, 68 South. 193; Funke v. McVay, 21 La. Ann. 192; State ex rel. Smith v. Judge, 29 La. Ann. 838; Schwan v. Schwan, 52 La. Ann. 1186, 27 South. 678. The one bond being given for costs, and presumably sufficient for that purpose, there could be no use in giving a second bond to cover the same costs.

The motion to dismiss is denied.

## On the Merits.

Mrs. Pessou executed a $15,000 note, and secured it by mortgage on her property, a house and lot on St. Charles avenue in this city. Thereafter she executed a note for $11,000, and secured it by mortgage on the same property. The latter note her husband pledged to the Cosmopolitan Bank to secure a note of his own of $9,000 held by said bank. These two notes the Cosmopolitan Bank delivered to the cashier of the Teutonia Bank, on receipt from this officer of $9,000. Whether this was a payment for account of Pessou, operating an extinguishment of the $9,000 note, or was a purchase of this note by the Teutonia Bank, is a question in the case; but unimportant, in view of our conclusions on other points.

The $15,000 first mortgage was foreclosed, and at the foreclosure sale the Teutonia Bank became the purchaser. After satisfaction of the first mortgage and costs there remained a surplus of $1,388.38 of the purchase price. This surplus was not paid to the sheriff, but was retained by the bank, purchaser at the sale, because of the second mortgage, securing the $11,000 pledged note. The property passed to the bank free of this second mortgage, except to the extent of the amount thus retained.

The surplus belonged to Mrs. Pessou, owner of the mortgaged property; but she made then, and is making now, no claim for it; hence it must be considered to have gone towards satisfying to that extent the $9,000 note secured by the pledge; and, as an effect of the bank's being at the same time holder of the pledged mortgaged note and owner of the mortgaged property, the mortgage was extinguished by confusion.

The present appeal involves two suits, consolidated, one via ordinaria against Pessou on the $9,000 note and on another note, and one via executiva against Mrs. Pessou on the $11,000 mortgage. Mrs. Spagnola, who by purchase from the Teutonia Bank is now owner of the property, has intervened in both suits, and has enjoined the executory process.

[2] The purchase by the bank at the foreclosure sale was not made in the bank's name, but in that of its president; and he on the next day transferred the property to the Delmar Realty Company. But this company was a mere holding company for the bank, and the president was in reality acting for the bank, so that the bank was the real purchaser and the real owner. On this point the evidence leaves no room for doubt; but it consists wholly of parol, and the learned counsel for plaintiff contend that a purchase of real estate which appears by the written evidence of the sale to have been made to one person cannot be shown by parol to have been made in reality by or for another person, and they cite the case of Hoffmann v. Ackermann, 110 La. 1070, 35 South. 293, and the decisions there cited. But that is true only where the offer of the evidence is for the purpose of affecting the title to the real estate. The rule then applies that title to real estate cannot be affected by parol. It is not true where the purpose of the evidence is simply to show the payment of a promissory note, or, as in this case, the extinguishment of a money obligation by confusion. In the instant case the title to the real estate remains entirely unaffected.

But if this evidence were excluded, and the mortgage were held not to have been extinguished by confusion, the plaintiff would be no better off, in view of the following letter addressed by plaintiff to Mrs. Pessou:

"New Orleans, La., May 12, 1914.

"Mrs. Carrie N. Pessou, City—Dear Madam: I have to-day instituted executory proceedings against you, the purpose of which is to cause to be seized and sold property formerly owned by you and which was mortgaged by you to secure a note of $11,000.00, dated March 14, 1907, and secured by a mortgage passed before George Montgomery, notary public. Under the law it is necessary that the proceedings be brought against you, but my only purpose is to exercise my rights as a mortgage creditor against the property formerly owned by you and not look to you personally for any part of the demand represented by the note.

"The property has passed out of your hands by reason of a previous seizure, and in that sale the purchaser retained in his hands, to apply to the note upon which we are issuing execution, the amount that we are now claiming from the property. It is for this reason we are not looking to you personally for anything.

"I advise you of this order that it may give you no unnecessary concern or cause you to go to any unnecessary expense. For that reason I now say to you that, without in any manner waiving or novating the rights I have against the property, I release you from all personal obligation on account of said note.

"Yours truly."

[3, 4] It is very certain that by this letter Mrs. Pessou was released from all obligation on the $11,000 note. If so, the mortgage securing this note ceased to exist, since a mortgage is a mere secondary obligation, and a secondary obligation cannot in the nature of things, exist in the absence of a primary.

Therefore this $11,000 mortgage has ceased to exist, and the judgment of the lower court perpetuating the injunction of Mrs. Spagnola is correct.

The other note sued on is for $2,500, and interest, and 10 per cent. attorney's fees. This note as well as the $9,000 note, and the $11,000 pledged note, and other notes, aggregating together some $200,000, were purchased at the bankruptcy sale of the Teutonia Bank for some $300, and were by the purchaser of them transferred to plaintiff.

[5] Pessou contends that this was the purchase of a litigious right; but (except for the agreement hereinafter to be mentioned) he does not pretend that these notes did not represent good, valid, and unquestioned obligations in the hands of the bank, and certainly promissory notes are not rendered litigious by being transferred for a low price. The record does not show why this mass of notes sold for so little. We assume it' was because the obligors on them were considered to be pecuniarily irresponsible.

[6] Some eight months after the acquisition of the property at the foreclosure sale

the Teutonia Bank sold it. Pessou contends that this was in violation of an agreement he had with the bank, and that by this violation of agreement he was liberated from the $9,000 debt. This pretended agreement is the one we alluded to awhile ago. It is not sought to be proved otherwise than by Pessou's uncorroborated testimony, and is said to have been to the effect that the bank would hold the property until Pessou could find a purchaser for it at a price sufficient to cover the amount the bank was out of pocket in connection with it together with this $9,000 debt; Pessou to pay interest on this $9,000 debt in the meantime.

This pretended agreement was not mentioned in the pleadings; and objection was made to any evidence being received in proof of it. It is inconsistent with the conduct of the bank in selling the property, and also with the conduct of Pessou himself, who admits that he made no demand for the carrying out of it. He says that the matter was "discussed," but that the sale "was a matter of necessity with the bank, and I had no say so in the matter." We conclude that, even if any agreement of that kind ever existed, and even if provable under the pleadings, it was simply a friendly promise not intended to last more than a few months, nor to be binding further than the bank could carry it out without inconvenience to itself.

Pessou has made no appearance in this court. On what ground judgment was rendered in his favor rejecting plaintiff's demands as to him we are not informed.

The judgment appealed from is therefore affirmed in so far as it perpetuates the injunction and dismisses plaintiff's foreclosure proceeding against Mrs. Pessou, and condemns plaintiff to pay the costs of suit No. 108601 of the docket of the trial court, and is set aside in so far as it dismisses plaintiff's suit against Pessou. And it is now ordered, adjudged, and decreed that the plain-

tiff, Jules Bernheim, have judgment against the defendant, Alphonse O. Pessou, in the sum of $9,000, with 7 per cent. per annum interest thereon from January 31, 1912. less $1,388.38, to be credited as of said date, and in the further sum of $2,500, with 8 per cent. per annum interest thereon from 27th day of March, 1912, plus 10 per cent. on this $2,500 and interest, and for the costs of suit No. 107815 of the docket of the trial court, and for one half of the costs of this appeal, and that plaintiff pay the other half of the costs of this appeal.